UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL AUMULLER

Petitioner,

v. Case No. 8:12-cv-389-T-23EAJ

SECRETARY, Department of Corrections,

Respondent.
_________________________________/

**O R D E R**

Michael Aumuller petitions for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his state conviction for first-degree murder. Aumuller alleges one ground of trial court error and one ground of ineffective assistance of trial counsel. Numerous exhibits ("Respondent's Exhibit__") support the response. (Doc. 10)

**FACTS**[1]

> Michael Aumuller challenges his conviction for first-degree murder by drug distribution in violation of section 782.04(1)(a)(3), Florida Statutes (2001).[1]
>
> [1] Section 782.04(1)(a)(3), Florida Statutes (2001), provides:

[1] This factual summary is from the state appellate court's order affirming Aumuller's conviction and sentence on direct appeal. (Respondent's Exhibit 6)

> The unlawful killing of a human being: . . . Which resulted from the unlawful distribution of any substance controlled under s. 893.03(1) . . . by a person 18 years of age or older, when such drug is proven to be the proximate cause of the death of the user, is murder in the first degree and constitutes a capital felony, punishable as provided in s. 775.082.

. . . .

The indictment charged that Aumuller "did unlawfully distribute . . . heroin, which was the proximate cause of the death of Ja[ir]on Nevius."[2] At trial, the State presented the testimony of Ryan Connaughton, Jason Aykroyd, and Jason Howlett, three friends of the deceased, each of whom recounted the events on the day that Nevius died.

According to Connaughton, he met Nevius in the early afternoon on March 9, 2002, and began "partying." They used marijuana and cocaine. Nevius also drank alcohol and used Valium. Nevius came up with the idea of getting heroin. They ran into Aykroyd, who joined them at Nevius's apartment. They discussed their desire to obtain heroin. Aykroyd used his cell phone to call someone, and then the three went in Aykroyd's car to a gas station to get the heroin. By this time, it was dark outside. Aumuller and a woman arrived in a red sports car and both came to Aykroyd's car to talk to Aykroyd and deliver the heroin. Aumuller told them the heroin "was fire," which Connaughton understood to mean that it was very potent. Nevius gave the money to Aykroyd. Aykroyd and Aumuller exchanged the money for the drugs. Aykroyd and Aumuller went into the store to get change and buy water. Aumuller and the woman then left in their car.

Aykroyd and Nevius then shot up the heroin in the car. Nevius fell asleep. Connaughton drove them back to Nevius's apartment. Connaughton and Aykroyd left Nevius sleeping in the car and went into the apartment where they shot up. About twenty minutes later, they went out to check on Nevius and found he was not breathing and had no pulse. They brought him into the apartment and tried to perform CPR. Nevius vomited while they were trying to revive him, but he was otherwise non-responsive.

---

[2] The indictment charged Aumuller as a principal under Section 777.011, Florida Statutes. (Respondent's Exhibit 1)

> . . .[A]fter about fifteen minutes, Aykroyd called the paramedics . . . .
>
> Aykroyd's testimony differed from that of Connaughton as to the details of the drug transaction. Aykroyd testified that . . . Aumuller drove a red Nissan 200SX car and had a girlfriend named Heather Crouse. Aykroyd met with Nevius and Connaughton at Nevius's house in the afternoon on March 9. They decided to get some heroin. Aykroyd used his cell phone to page Aumuller, and Aumuller returned the call. Aykroyd conveyed to Aumuller that he wanted to buy a half gram of heroin. Aumuller indicated that he was going to Tampa to "re-up" which Aykroyd understood to mean that he planned to get more heroin.
>
> Aykroyd paged Aumuller again a few hours later, and this time Crouse called back. Aykroyd and Crouse set a location, a gas station, where the drug transaction would occur. He also asked Crouse to sell him some Ecstasy. Aykroyd, Connaughton, and Nevius waited at the gas station for about an hour before Crouse and Aumuller arrived in Aumuller's red Nissan. Crouse was driving. . . . Crouse got out of the car and went up to Aykroyd's window to exchange the money for the drugs. Nevius gave the money to Aykroyd because Nevius was buying the drugs, and Aykroyd gave the money to Crouse. Aumuller never got out of his car. Crouse went into the store to get change. Crouse and Aumuller drove away.
>
> Aykroyd handed the heroin to Nevius, who proceeded to make "his fix" and hand the bag back to Aykroyd. Aykroyd noticed that Nevius took a lot more than what would be normal. They both put the heroin in a spoon, mixed it up, put it in a syringe, and shot it into their arms. Aykroyd blacked out in the driver's seat. Connaughton drove them to Nevius's house. Nevius fell asleep on the way. Aykroyd and Connaughton left Nevius sleeping in the car and went into the house to shoot up more heroin.
>
> . . . .
>
> Officer Quinones testified that he was sent to investigate the overdose at 3:21 a.m. Upon arriving at the house, he found a white male slouched over and non-responsive. The paramedic who arrived testified that Nevius was pronounced dead at 3:33 a.m. He appeared to have been dead for a couple of hours.

> Detective Faugno . . . interviewed Aumuller after reading him his rights. Aumuller said that Crouse was his girlfriend and that he knew Aykroyd. He said that on the night in question Aykroyd wanted to buy heroin and ecstasy from him. Aumuller recalled having to make a special trip to get the pills separate from the heroin. He said that he had to put Aykroyd at the bottom of the list for that reason. Aumuller said that he bought the drugs from someone in Tampa and that he called Aykroyd back with a location for the transaction. . . .
>
> A forensic toxicologist for the medical examiner's office examined autopsy samples from Nevius and testified that the urine sample indicated the presence of caffeine, nicotine, cocaine, marijuana, and heroin. The blood sample showed the presence of heroin in a level consistent with the range for accidental overdose. According to the toxicologist, cocaine did not play a role in the cause of death in this case.
>
> The associate medical examiner who performed the autopsy testified that she determined from the toxicology reports that the cause of death was heroin toxicity.

(Respondent's Exhibit 6, pp.1–7) A jury convicted Aumuller of first-degree murder for which he serves life imprisonment.

## I. EXHAUSTION AND PROCEDURAL BAR

### Ground One

Aumuller contends that the trial judge's rejection of an intervening cause jury instruction resulted in a violation of Aumuller's right to due process. Aumuller raised this issue on direct appeal but argued only a violation of state law. The failure to present to the state court a federal due process claim challenging the jury instruction renders the claim unexhausted. Before a federal court may grant habeas relief, a federal habeas petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion.

28 U.S.C. § 2254(b)(1)(A), (C). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted)). To exhaust a claim, a petitioner must present the state court with the particular legal basis for relief in addition to the facts supporting the claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement that a federal habeas corpus petitioner exhaust available state court remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such

claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). A petitioner must "do more than scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell*, 416 F.3d 1291, 1302–03 (11th Cir. 2005) (quotations and citations omitted).

In his direct appeal brief Aumuller failed to alert the state appellate court of a federal due process claim. *See Anderson v. Harless*, 459 U.S. 4, 5–6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made."). Aumuller's failure to present to the state court the federal component of ground one deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. Consequently, the exhaustion requirement remains unsatisfied, *Henry*, 513 U.S. at 365, rendering ground one procedurally defaulted.

Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, a petitioner must demonstrate not only that the errors at his

trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimension. *United States v. Frady*, 456 U.S. 152 (1982). In other words, he must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892.

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495–96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

Aumuller fails to demonstrate cause and prejudice excusing the default of his federal claim. *Carpenter*, 529 U.S. at 451; *Carrier*, 477 U.S. at 49–96. He neither alleges nor shows that the fundamental miscarriage of justice exception applies. *Henderson*, 353 F.3d at 892. Because Aumuller fails to proffer specific facts showing an exception to procedural default, ground one is procedurally barred from federal review.

## II. MERITS

Aumuller's remaining ground is exhausted and entitled to review on the merits.

### Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme

> Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786–87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given

effect to the extent possible under law." *Cone*, 535 U.S. at 693. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, ____ U.S. ____, 130 S. Ct. 1855, 1866 (2010). *See also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court affirmed the denial of Aumuller's Rule 3.850 motion to vacate. (Respondent's Exhibit 16) The state appellate court's *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398. Aumuller bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Aumuller's post-conviction claims warrants deference in this case.

**<u>Standard for Ineffective Assistance of Counsel</u>**

Aumuller claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466

> U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Aumuller must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Aumuller must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Aumuller cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v.*

*Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Aumuller must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (A petitioner must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

**Ground Two**

Aumuller contends that his trial counsel rendered ineffective assistance (1) by proposing an inapplicable special jury instruction, (2) by failing to "substantially" investigate the victim's cause of death and not presenting "the fruit" of that investigation to the jury, and (3) by introducing no evidence that another person confessed to the crime.

(1) Jury instruction

Aumuller testified at trial that he gave Crouse the heroin that she, in turn, sold to the victim. Trial counsel pursued an "independent act" defense and requested an "independent act" jury instruction.[3] Aumuller contends that trial counsel should have instead pursued an abandonment/withdrawal defense because Aumuller testified at trial that he participated in the drug transaction "but withdrew from the crime and renounced his participation." (Doc. 1, p. 9) Aumuller argues that trial counsel's error fell outside the range of competent representation and deprived him of a fair trial.

The state post-conviction court rejected this claim in Aumuller's Rule 3.850 motion:

> Defendant alleges that counsel was ineffective for requesting an inapplicable jury instruction when a plausible instruction was available. Specifically, he argues that the independent act instruction was improper because it required the jury to find that Defendant was not involved at all. Instead, Defendant contends

[3] The trial judge instructed the jury (Respondent's Exhibit 22, Vol. 3, pp. 452–53):

> If you find that the crime alleged was committed, an issue in this case is whether the crime of distribution of heroin was an independent act of a person other than the defendant. An independent act occurs when a person other than the defendant commits or attempts to commit a crime.
>
> One, which the defendant did not intend to occur, and two, in which the defendant did not participate, and three, which was outside of and not a reasonably foreseeable consequence of the common design or unlawful act contemplated by the defendant.
>
> If you find the defendant was not present when the crime of distribution of heroin occurred, that does not, in and of itself, establish that the distribution of heroin was an independent act of another.
>
> If you find that the distribution of heroin was an independent act of Heather Crouse, then you should find Michael Aumuller not guilty of the crime of distribution of heroin.

> counsel should have requested a jury instruction on abandonment/voluntary withdrawal, which was supported by Defendant's testimony that he renounced his intention to participate.
>
> This claim has no merit. Abandonment is a valid defense only in cases in which a person is charged with attempting to commit an offense or with committing an offense that involved an attempt as a lesser-included offense and the defendant presents evidence showing that he or she voluntarily abandoned the attempt before committing the substantive crime. *See Dixon v. State*, 559 So. 2d 354, 355 (Fla. 1st DCA [1990]). The crime of attempt requires a specific intent to commit a particular crime and an overt act toward the commission of the crime. *Williams v. State*, 967 So. 2d 735 (Fla. 2007).
>
> As the indictment clearly reflects, Defendant was not charged with attempting to commit an offense in this case. Additionally, since the charged offense did not require proof of specific intent, it could not involve an attempt as a lesser included offense. Once the unlawfully distributed substance caused the victim's death, the offense was completed and Defendant could not avoid an adjudication of guilt as to the charged offenses by showing that he had thereafter abandoned his criminal purpose. *See Dixon*, 559 So. 2d at 357. As a result, counsel was not ineffective in failing to request an instruction on a defense that was irrelevant to the offense charged. *See id.* Accordingly, this claim is denied.

(Respondent's Exhibit 12, pp. 4–5) (court's record citations omitted)

Aumuller shows no entitlement to an abandonment defense.

> Florida recognizes the common-law defense of abandonment, also referred to as withdrawal or renunciation.[4] Abandonment is

---

[4] Section 777.04(5), Florida Statutes, provides:

> It is a defense to a charge of criminal attempt, criminal solicitation, or criminal conspiracy that, under circumstances manifesting a complete and voluntary renunciation of his or her criminal purpose, the defendant:
>
> > (a) Abandoned his or her attempt to commit the offense or otherwise prevented its commission;

(continued...)

> a valid defense only in cases in which a person is charged with attempting to commit an offense, or with committing an offense that involves an attempt as a lesser-included offense. Further, in order to constitute a defense, abandonment must be complete and voluntary. Thus, in order to assert the abandonment defense, a defendant must present evidence which shows that a voluntary abandonment of the attempt occurred prior to committing the substantive crime.

Elizabeth Bosek, J.D., et al., FLORIDA JURISPRUDENCE, CRIMINAL LAW — SUBSTANTIVE PRINCIPLES AND OFFENSES, § 285 (2d ed. 2011) (footnotes omitted) (citing *Carroll v. State*, 680 So. 2d 1065, (Fla. 3d DCA 1996) and *Dixon v. State*, 559 So. 2d 354 (Fla. 1st DCA 1990)). The indictment charged Aumuller with first-degree murder by drug distribution. The trial judge instructed the jury that "the lesser crimes indicated are murder in the second degree, manslaughter, and sale of heroin." (Respondent's Exhibit 22, Vol. 3, pp. 446–47) Because abandonment is not a defense to the charged offense, trial counsel had no basis to either pursue the defense or request an abandonment instruction. Aumuller offers no evidence establishing that the abandonment defense would have resulted in his acquittal. He satisfies neither *Strickland's* deficient performance requirement nor prejudice requirement to support a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 691–92. The state

---

[4](...continued)

> (b) After soliciting another person to commit an offense, persuaded such other person not to do so or otherwise prevented commission of the offense; or
>
> (c) After conspiring with one or more persons to commit an offense, persuaded such persons not to do so or otherwise prevented commission of the offense.

post-conviction court neither unreasonably applied *Strickland* nor unreasonably determined the facts in rejecting this claim. 28 U.S.C. § 2254(d)(1), (2).

(2) Investigation

Aumuller contends that his trial counsel rendered ineffective assistance by not investigating either "red flags" about the victim's death[5] or the "scientific field" or the law applicable to his case. Aumuller further contends that trial counsel should have retained both a pathologist and a toxicologist. He alleges that the pathologist would have opined that an obstructed airway rather than heroin caused the victim's death. Aumuller speculatively asserts that the toxicologist "would have refuted the opinion of the State's expert toxicologist." (Doc. 1, p. 11)

The state post-conviction court denied this claim in Aumuller's Rule 3.850 motion:

---

[5] Aumuller alleges that trial counsel had a duty to "substantially" investigate the following (Doc. 1, pp.10–11):

a) The toxicologist prior counsel obtained permission to hire
b) Opinion of State expert toxicologist that any heroin found in blood implies heroin toxicity
c) The State medical examiner's finding based [on the] toxicology report since nothing from [the] autopsy indicated death
d) Concentrat[ion] of heroin at the "bottom" of toxicity range for people without tolerance when [the victim] had tolerance (i.e., prior use)
e) No other deaths occurred from same heroin used when greater amounts w[ere] used in some witnesses
f) After alleged "legal [sic] injection," [the victim] moved Aykroyd from front seat to back seat
g) Unidentified pill may have caused death
h) Airway was described as obstructed
i) Effects of the Heimlich maneuver on an unconscious man
j) Vomiting would have cleared airway
k) The lapse of time from use of heroin to death was unusually long (time indicated by phone records, testimony, and metabolite breakdown)

> Defendant alleges that his counsel was ineffective for failing to investigate the cause of death and consult an independent pathologist and toxicologist despite Defendant's requests. Specifically, Defendant claims that the trial testimony of the toxicologist . . . did not negate the possibility of a substantial amount of cocaine in the victim's blood and that, therefore, more testing was required. Additionally, he argues that an independent pathologist would have shown that the victim's airway was blocked at the time of his death. Lastly, Defendant contends that counsel should have explored the fact that the victim was observed taking an unknown "fatal pill" on the night of the offense.
>
> This claim has no merit. First, contrary to Defendant's assertion, [the State's toxicologist] testified that there was no detectable cocaine in the victim's blood and that the victim was not under the influence of cocaine at the time of his death.[6] Accordingly, [the toxicologist] concluded that cocaine did *not* play a role in the victim's death.
>
> As to the assertions regarding the victim's blocked airway and the unknown "fatal pill," Defendant does not indicate what evidence an independent expert could [have] presented to benefit his case. *See Beasley v. State*, 18 So. 3d 473, 484 (Fla. 2009) ("Absent any evidence of what an expert could and would have presented, a defendant cannot establish a reasonable probability that expert testimony would have impacted the original trial."). Specifically, Defendant does not allege that additional testimony on these issues would have shown that heroin toxicity did not cause the victim's death. Therefore, Defendant's claim appears to be based on nothing more than his own speculation and, as such, it cannot form the basis for post-conviction relief. *See Knight v. State*, 923 So. 2d 387, 399 (Fla. 2005) (holding that speculative and conclusory allegations are insufficient to warrant an evidentiary hearing).

[6] The State's toxicologist testified that testing of the victim's urine showed a "recent use of cocaine; however, at the time of death the decedent was not under the influence of cocaine . . . ." (Respondent's Exhibit 12, final order denying Rule 3.850 motion, Ex. C, p. 237) The toxicologist further opined that, "[e]ven if there had been, for example, a trace of cocaine in the system, the detection of the cocaine was so low, an amount less than that would have no cause or impact whatsoever." (Respondent's Exhibit 12, final order denying Rule 3.850 motion, Ex. C, p. 245)

> Further, the record reflects that counsel thoroughly cross-examined the State's experts regarding the presence of substances in the victim's system and the potential for other causes of death. As a result, Defendant has not established that counsel's performance was deficient. *See Belcher v. State*, 961 So. 2d 239 (Fla. 2007) ("[I]t is unnecessary to retain a defense expert where defense counsel cross-examined the State's experts to establish the facts necessary for the defense."). Accordingly, this claim is denied.

(Respondent's Exhibit 12, pp. 8–9) (emphasis in original) (court's record citations omitted)

"Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)[7] (citations omitted). "The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1322 (11th Cir. 2002). Trial counsel must decide which strategic and tactical option to pursue. *See e.g., Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'") (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

---

[7] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

A habeas petitioner must overcome a presumption that counsel's challenged conduct was a matter of strategy. *Strickland*, 466 U.S. at 689; *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). A defendant's disagreement with counsel's tactics or strategy will not support a claim of ineffective assistance of counsel. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*) ("[W]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision."); *Chandler*, 218 F.3d at 1314 (finding that counsel cannot be deemed incompetent for performing in a particular way in a case as long as the approach taken "might be considered sound trial strategy").

Aumuller presents no evidence establishing that trial counsel failed to investigate the applicable law, the facts of the case, or the medical evidence.
He likewise offers no evidence supporting his speculative assertion that trial counsel rendered ineffective assistance by not retaining either a toxicologist or a pathologist. Aumuller speculates about the testimony of both a toxicologist and a pathologist. He presents no evidence showing that either expert would have testified as he hypothesizes. *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted). Aumuller fails to demonstrate that trial counsel's performance fell outside the bounds of reasonable professional judgment. *See Dorsey v. Chapman*, 262 F.3d 1181, 1186 (11th Cir. 2001)

(holding that petitioner did not establish ineffective assistance based on defense counsel's failure to call an expert witness because petitioner failed to show that counsel's decision was so patently unreasonable that no competent attorney would have chosen that strategy), *cert. denied*, 535 U.S. 1000 (2002). Aumuller offers no evidence establishing that the proposed testimony of either a toxicologist or pathologist would have resulted in his acquittal. He satisfies neither *Strickland's* deficient performance requirement nor prejudice requirement to support a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 691-92. The state post-conviction court neither unreasonably applied *Strickland* nor unreasonably determined the facts in rejecting this claim. 28 U.S.C. § 2254(d)(1), (2).

(3) Confession of another

Aumuller alleges that his girlfriend, Heather Crouse, testified before the grand jury that Aumuller committed the underlying felony (unlawful distribution of heroin). He claims that before trial he received a copy of two recorded statements in which Crouse both confessed to a fellow jail inmate (Lisa Morande) that she (Crouse) committed the underlying felony[8] and admitted to her mother that "they got the real thing." (Doc. 1, p. 12) Aumuller claims that he asked trial counsel to depose Crouse but "[c]ounsel refused in favor of Crouse invoking her right against

---

[8] Aumuller attached to his Rule 3.850 motion a transcript of a tape-recorded conversation between Morande and Heather that includes Heather's statement that Aumuller was in the car when she was selling the drugs and that he "had nothing to do with it" and that he "took the rap" for her. (Respondent's Exhibit 11, attach. G to Aumuller's Rule 3.850 motion, pp. 3, 10)

self-incrimination before the jury rather than making her unavailable before trial." (Doc. 1, p. 12) Aumuller argues that trial counsel rendered ineffective assistance (1) by not calling Crouse as a defense witness or introducing her taped confession, (2) by not making Crouse's mother available to corroborate Crouse's truthfulness, and (3) by not presenting a complete defense.

The state post-conviction court denied this claim in Aumuller's Rule 3.850 motion:

> (a) Failure to Introduce Taped Confessions
>
> Defendant alleges that his counsel was ineffective for failing to prepare and introduce evidence that on December 29, 2003, inmate Lisa Morande, who was wearing a wire at the direction of police detectives, taped Heather Crouse confessing that she sold the heroin and ecstasy that resulted in the victim's death. In addition, Defendant claims that Crouse told her mother . . . in a taped phone conversation that "they got the real thing" on tape. Defendant alleges that he asked counsel to investigate the transcribed tapes of Crouse's confessions but that he failed to do so.
>
> First, Defendant has not established prejudice. Defendant was charged under section 777.011, Florida Statutes, which defines a "principal" as a person who "helped another person or persons commit a crime." While the conversations with M[o]rande show that Crouse admitted to the handing over [of] the drugs and collecting the money, they also confirm that Defendant participated in the transaction.[FN] In fact, a transcript of the taped conversation reveals that Defendant and Crouse went to purchase the drugs together and that Crouse gave Defendant the money from the transaction and asked him to obtain change from the store. Thus, even if the recording had been admitted, Crouse's statements would not have demonstrated that Defendant was not a principal as charged. § 777.011, Fla. Stat.; Fla. Std. Jury Instr. 3.5(a) (Crim.). Similarly, the fact that Defendant was involved is not refuted by Crouse's comment to her mother that "they got the real thing."

> FN. The court also notes that the jury heard testimony that Crouse was the one who did the hand-to-hand transaction.

> Neither conversation was sufficiently exculpatory to overcome the other evidence of Defendant's involvement, which includes his admission to law enforcement and the testimony of two other witnesses who acknowledged Defendant's participation in the deal. As a result, Defendant has not shown a reasonable probability that the outcome of his trial would have been different had the tapes been introduced as evidence. The claim is denied.

> (b) Failure to Call Witnesses

> Next, Defendant alleges that counsel should have called inmate[] Lisa Mirande . . . and [Crouse's mother] as witnesses at trial, as they "were needed to overcome the scheme Crouse had planned."

> This claim has no merit. First, even if counsel had called these witnesses to testify about Crouse's recorded statements, the testimony would not have been sufficient to overcome the evidence showing Defendant's involvement. As discussed in part (a) of this claim, Defendant's participation was corroborated by his own statements to law enforcement as well as by the trial testimony of other witnesses. Further, the conversation between Crouse and Mirande only confirmed Defendant's involvement. Therefore, Defendant has failed to show that counsel was deficient by not calling these witnesses.

> Finally, Defendant has not demonstrated that the recorded conversations or the testimony from other witnesses related to Crouse's conversations could overcome a hearsay objection. By Defendant's own contention, Crouse was available to testify. Therefore, her statements would not be admissible as a statement against penal interest pursuant to section 90.804(2)(c), Florida Statutes. Counsel cannot be deemed ineffective for failing to introduce inadmissible evidence. *See Owens v. State*, 986 So. 2d 534, 556 (Fla. 2008).

(Respondent's Exhibit 12, pp. 2–3) (court's record citations omitted)

Even assuming that Crouse's recorded statements were admissible and that trial counsel performed deficiently by not introducing the statements at trial, Aumuller shows no resulting prejudice. Both Connaughton and Aykroyd testified to Aumuller's participation in the drug sale. (Respondent's Exhibit 22, Vol. 1, pp.146, 188-95) Detective Faugno testified about Aumuller's admission to the police that he obtained the heroin and sold the heroin to Aykroyd. (Respondent's Exhibit 22, Vol. 2, pp. 279–80) Aside from his own speculation, Aumuller provides no evidence establishing that either Crouse or her mother was available or willing to testify, nor has he submitted a sworn affidavit from either witness. *Ashimi*, 932 F.2d at 650. *See also Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (rejecting ineffective assistance of counsel claim based on an alleged failure to investigate a witness because petitioner did not present an affidavit from the witness demonstrating that he would have provided testimony helpful to the defense); *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991) (holding that failure to interview a witness could not constitute ineffective assistance without a showing that the investigation would have helped defendant). "[M]ere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof." *Streeter v. United States*, 335 Fed. App'x 859, 864 (11th Cir. 2009)[9] (citing *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001)). Aumuller meets neither *Strickland's* deficient performance requirement nor prejudice

---

[9] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

requirement to support this claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 691–92. He fails to establish that the state post-conviction court's rejection of this claim was contrary to, or an unreasonable application of, *Strickland*. 28 U.S.C. § 2254(d)(1), (2).

Accordingly, Aumuller's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk must enter a judgment against Aumuller and close this action.

**DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS***

Aumuller is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Aumuller must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Aumuller is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Aumuller must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 30, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE